IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELMER SKAGGS *
    Plaintiff
  v. * Civil Action No. PJM-09-3004

CORRECTIONAL MEDICAL SERVICES, *
  INC.
    Defendant. *
                                ***

## **MEMORANDUM OPINION**

Pending in this diversity/civil rights action[1] is Defendant's Motion to Dismiss or for Summary Judgment. Paper No. 12. Plaintiff has filed his Opposition. Paper No. 14. The undersigned finds a hearing in this matter to be unnecessary. Local Rule 105.6 (D. Md. 2009). For the reasons set forth more fully below, Defendant's dispositive motion shall be granted.

### **Background**

Plaintiff, an inmate at Eastern Correctional Institution, claims Defendant provided him unreasonable follow-up medical care for a "crush" injury to his index finger he suffered on November 13, 2007, when he was assigned to the Metal Shop at the Maryland Correctional Institution in Hagerstown ("MCIH"). He claim that the finger was surgically repaired by Dr. Aryeh Herrera, but medical staff took no action to ensure that post-surgical care (cleaning the wound or applying clean bandages) was provided in response to his complaints of increased pain. Plaintiff contends that as a result he developed a severe infection which required a partial digital amputation. Paper No. 1.

### **Standard of Review**

---

[1]     Plaintiff filed this pro se action invoking the district court's diversity jurisdiction under 28

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing

---

U.S.C. § 1332. The Court alternatively construed the action as a 42 U.S.C. § 1983 civil rights complaint.

that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

In order to state an Eighth Amendment constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Estelle*, 429 U.S. at 106; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care, 'the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is

'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).  In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Defendant's dispositive motion is supported with the affidavit of Dr. Isaias Tessema and Plaintiff's medical records.  Paper No.12 at Exs. A & B.  In his affidavit, Dr. Tessema explains that Plaintiff was initially treated on-site at MCIH for multiple open crush injuries to his right index finger and given Nubain for pain and a tetanus booster.  He was then transported to the Emergency Department of the Washington County Hospital ("WCH") for further examination.  Dr. Herrera examined Plaintiff at WCH and diagnosed him with open fractures of his middle and distal phalanges of his right index finger. On November 14, 2007, Herrera performed an open (surgical) reduction and internal fixation of the phalangeal fractures.  He ordered a follow-up appointment for Plaintiff in one week and a consultation request form was submitted.  In the interim Dr. Erwin Aldana prescribed Keflex, an antibiotic, to prevent infection and Tylenol #3 for three days of pain relief.

On December 5, 2007, Plaintiff appeared at the MCIH dispensary to ask if his dressing should be changed.   A nurse observed that the bandage was intact, but checked with Dr. Aldana, who opined that the dressing was to be changed only if it was dirty or there were signs of infection.  The nurse made no such observations and the dressing was not changed.   Two days later Plaintiff

4

was evaluated by Dr. Aldana and complained that his index finger throbbed off and on. Dr. Aldana prescribed Naprosyn, a non-steroidal anti-inflammatory drug ("NSAID"), for pain. On December 13, 2007, Plaintiff was evaluated by Dr. Gary Sherman of Robinwood Orthopaedic Specialty Center. Plaintiff was informed that because he had a comminuted injury (a fracture in which a bone is broken, splintered or crushed into a number of pieces) with multiple pins placed in the fractures it was very unlikely to heal in any good manner or shape. Dr. Sherman observed no signs of infection at that time. He advised Plaintiff that he was still at risk for infection, failure of fixation, wound healing problems, swelling, pain, and malunion or non-union of the fracture fragments. Plaintiff was also told that even in the best case scenario, he would not be able to use the index finger again and that the best course of action would be to amputate the tip of his right index finger at the middle phalanx. Sherman ordered salt water soaks once a day or every other day and the redressing of the finger after each soak. He further ordered that Plaintiff be seen in his office in two weeks for re-evaluation.

On January 10, 2008, Plaintiff was again seen by Dr. Sherman, who noted that Plaintiff had developed severe necrotic tissue over the radial or outer edge of his right index finger involving the nerves and ligaments and extending down to the bone. An amputation was recommended and Plaintiff agreed to proceed with the procedure. On January 30, 2008, he was seen by Dr. Herrera. Herrera performed a debridement, removed the wires used to fix the fractures, reconstructed a flap of skin to cover the exposed bone, and applied a clean dressing to the area A culture taken of the wound tested positive for staphylococcus.

On February 3, 2008, Plaintiff was seen by Dr. Rakesh Malik for his complaint of increased pain, swelling, and erythema (redness) of his hand. Malik noted that Plaintiff had wrapped plastic

5

tape around his finger to protect the bandage. When the Plaintiff's dressing was removed, Dr. Malik found that Plaintiff's right index finger was necrotic, red and swollen. Plaintiff, who had already been scheduled for a right index finger amputation on February 16, 2008, was given Keflex and then Bactrim, both antibiotics, for treatment.

On February 6, 2008, Plaintiff underwent an amputation of the distal interphalangeal ("DIP") joint of his right index finger. He was discharged back to MCIH with orders to continue taking Bactrim for five weeks, Tylenol #3 for pain, and to have his dressing changed twice a day. Plaintiff was seen by Dr. Herrera for a follow-up on February 13, 2008. Herrera noted that the pain was significantly improved after the amputation. On March 31, 2008, Plaintiff underwent a bone scan to assess for osteomyelitis. The scan was inconclusive and a white blood cell study was conducted. The study showed no evidence of infection in Plaintiff's finger and his finger continued to heal without incident.

The Court finds no showing of deliberate indifference with regard to treatment for Plaintiff's crush injury.[2] He received adequate post-surgical care and treatment in the form of pain medication, antibiotics, and both nursing and physician examination and care. His complaints of pain and swelling were addressed through the prison sick call system. The fact that Plaintiff required further surgical care to treat developments of necrosis and non-healing in the comminuted finger injury does not form the basis of an Eighth Amendment claim.

---

[2] To the extent the Complaint names Correctional Medical Services, Inc. ("CMS") in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear. The doctrine of *respondent superior* does not apply to 42 U.S.C. § 1983 claims. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopko Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982).

Insofar as the allegation that the care provided to Plaintiff does not comport with accepted medical practice, the claim is one of medical malpractice. A medical malpractice claim is not transformed into a constitutional rights violation simply by virtue of Plaintiff's status as a prisoner. *See Russell*, 528 F.2d at 319. Liability for negligently inflicted harm is categorically beneath the threshold of a constitutional claim. Plaintiff originally filed this action as a medical negligence claim under the Court's diversity jurisdiction. As such, Plaintiff would be required to comply with the requirements of Maryland's Health Care Malpractice Claims Act ("HCMCA") prior to bringing a medical malpractice claim. Defendant argues and it is not refuted that the HCMCA precludes Plaintiff from filing his medical malpractice claim as he did not fully exhaust his claim before the Maryland Health Claims Alternative Dispute Resolution Office as a condition precedent to any judicial action. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02. This exhaustion requirement applies to claims of medical malpractice filed in federal courts.[3] *See Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F. Supp. 778, 779-81 (D. Md. 1978*); see also Lewis v. Waletzky*, 576 F. Supp. 732, 736-387 (D. Md. 1978).

## Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss or for Summary Judgment shall be granted by separate Order which follows.

April 26, 2010

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's medical malpractice claim shall be dismissed without prejudice. *See, e.g. Octopi v. McGowan*, 294 Md. 83, 447 A.2d 860, 864-65 (Md. 1982) (holding that the condition precedent of exhaustion does not take away the subject matter jurisdiction of a state circuit court to hear and render judgments in cases involving claims that fall within the Health Care Malpractice Claims Act).